**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIAN MEAR,<br>Plaintiff,<br><br>-against-<br><br>ROBERT CAPUTO,<br>Defendant. | Case No. 7:24-cv-7696-CS<br>Judge: Hon. Cathy Seibel<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Julian Mear, by his attorneys Daniel Joseph Jones, Law Office of D. J. Jones PLLC, brings this action against the captioned Defendant and alleges as follows:

## INTRODUCTION

1. This is an action for breach of contract and unjust enrichment resulting from Plaintiff loaning bitcoin ("BTC") to Defendant with a current value of approx. $1.89 million, and Defendant's failure to repay the loan.

2. Plaintiff seeks repayment of the outstanding loaned amount with statutory interest and attorney's fees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Connecticut and

a citizen of New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that the sole Defendant resides in this district.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

6. Plaintiff Julian Mear is an individual who resides in Connecticut.

7. Defendant Robert Caputo is an individual who resides in Harrison, New York.

**STATEMENT OF FACTS**

8. Defendant and Plaintiff have known each other as family friends since around 2011, when they met through a mutual friend in Scarsdale, New York.

9. Plaintiff had frequent face-to-face contact with Defendant since around 2011, primarily meeting at their mutual friend's place of business in Bedford Hills, New York, as well as other locations.

10. Plaintiff manages a family business in Armonk, New York.

11. Since January 2018, Defendant's sister has worked in an office adjacent to Plaintiff's office in Armonk, and Plaintiff and Defendant have had frequent casual face-to-face meetings in this building.

12. BTC is a cryptocurrency with a floating market value. As of the date of this Amended Complaint, 1 BTC is valued at approx. $105,000.

13. Plaintiff and Defendant developed a common interest in cryptocurrencies such as BTC starting around 2015, and frequently casually discussed the subject, among other topics such as business, family, and professional sports.

14. During this time, Plaintiff was aware of Defendant's involvement in numerous large business ventures; in particular, the aviation company managed by Defendant, iAero Group, secured hundreds of millions of dollars in investment by Blackstone that allowed it to acquire a major maintenance, repair and overhaul operation in Miami, as well as Swift Air, the country's largest independent aircraft charter business.

15. As a result of this track record, and their personal friendship, Plaintiff deeply trusted Defendant's business acumen.

16. One day around late 2017, Defendant explained to Plaintiff that Defendant invested 60 BTC of his own in an arbitrage platform managed by unidentified friends who were skilled ex-Wall Street traders, and there was an opportunity for Plaintiff to invest.

17. Plaintiff and Defendant discussed the opportunity during their in-person meetings over a period of several months.

18. Defendant repeatedly told Plaintiff that he would personally back-stop the repayment of whatever funds Plaintiff was willing to commit.

*THE PARTIES EXCHANGE A DRAFT NOTE*

19. Plaintiff and Defendant eventually reached an agreement that Plaintiff would loan BTC to Defendant, which Defendant would use for the opportunity.

20. On February 22, 2018, at 11:21 AM, while Plaintiff was at his desk in Armonk, Defendant sent a draft "Promissory Note for Digital Currency" (the "Draft Note") to Plaintiff by text message.

21. Defendant prepared the Draft Note without any input from Plaintiff.

22. The Draft Note was a form of promissory note that called for Plaintiff to loan a principal amount of 10 Bitcoins (BTC) to Defendant, and for Defendant to repay that amount in full on February 22, 2019.

23. The Draft Note called for monthly installments of interest paid from March 22, 2018 to February 22, 2019 at a fixed annual rate of return.

24. Section III of the Draft Note further provided: "If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs

of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process."

*THE PARTIES FORM A CONTRACT*

25. After receiving the Draft Note, the parties orally agreed that Plaintiff would loan Defendant 20 BTC on the terms of the Draft Note.

26. At 2:06 PM on the same day, less than three hours after sharing the Draft Note, Defendant sent a Bitcoin wallet address to Plaintiff by text message.

27. Later that day, Plaintiff transferred 20 BTC to Defendant's designated wallet address.

28. Prior to Plaintiff's loan, Defendant did not disclose to Plaintiff exactly where or to whom the BTC would be sent, or any other details of the proposed investment.

29. Plaintiff made the loan in reliance upon his trust in Defendant's honesty and business acumen.

*DEFENDANT DEFAULTS*

30. No payments had been made on the loan by the original agreed repayment date of February 22, 2019.

31. At some point prior to September 2019, Defendant came to Plaintiff's office in Armonk and paid $6,000 in cash to Plaintiff.

32. Thereafter, on September 17, 2019, Defendant paid 2 BTC to Plaintiff.

33. Defendant intended that both of these payments would be partial payments of Defendant's obligations in relation to Plaintiff's original 20 BTC loan.

34. Defendant never explained the reasons for the repayment amounts he chose.

35. On April 29, 2020, Plaintiff reached out to Defendant requesting another partial repayment of the loan.

36. After receiving this message, Defendant orally told Plaintiff that he had obtained a Paycheck Protection Program loan that would allow him to repay Plaintiff, that he was receiving an annual salary of $1 million, and that he would personally "back-stop" the loan by Plaintiff.

37. On April 30, 2020, Defendant proposed by text message that: "The original coins (20-2=18) will be returned. The interest will be tbd based on the performance of the platform which I know struggled for a while but was doing better."

38. Plaintiff agreed to Defendant's proposal, understanding that Defendant was promising to return the outstanding balance of 18 BTC.

39. On July 31, 2020, Plaintiff expressed by text message to Defendant that he "would like to figure out a plan to return the btc."

40. In response to this, Defendant wrote by text message: "Unfortunately it's on me, but I'll get it done."

41. On October 21, 2020, Plaintiff asked Defendant by text message to "please let me know how we can arrange getting the BTC/$ from your guy," referring to the still-unspecified platform in which Defendant had purportedly invested the BTC loaned by Plaintiff.

42. On November 24, 2020, Plaintiff again asked Defendant for an update by text message. Minutes later, Defendant said "I'm going to send you 25k next week." Defendant never did so.

43. On December 22, 2020, Defendant told Plaintiff by text message that he would "get the first payment out over the next two weeks," and requested Plaintiff's bank account details. This payment was also never made.

44. On several occasions from early 2018 through early 2024, Defendant came to the Armonk office building in which Plaintiff and Defendant's sister keep their offices. During these visits, Plaintiff and Defendant continued to have friendly conversations.

45. Out of a sense of friendship with and trust in Defendant, Plaintiff refrained from demanding repayment during this time.

46. Defendant never made any proactive effort to update Plaintiff on the status of the BTC loaned by Plaintiff.

*DEFENDANT REPUDIATES THE CONTRACT*

47. In March and April 2024, Plaintiff followed up with Defendant asking for a meeting to discuss the status of the BTC loaned by Plaintiff.

48. After several weeks of back and forth text messages, Plaintiff and Defendant had a phone call on April 25, 2024, where Defendant told Plaintiff that he had invested the bitcoin with one Marlon Beckford ("Beckford") who had not paid Defendant back, in part because of his bank account being shut down in late 2018.

49. During subsequent oral conversations, including a phone call between Plaintiff, Defendant, and Beckford on May 9, 2024, Defendant repeatedly directed Plaintiff to seek repayment from Beckford.

50. In a text message on August 30, 2024, Defendant expressly repudiated his prior contract with Plaintiff, telling Plaintiff that only Beckford would repay the loan, and demanding that Plaintiff talk directly to Beckford.

51. The loan principal of 18 BTC remains unpaid to Plaintiff.

52. The loan principal of 18 BTC is worth approximately $1,800,000 at current market rates.

**AS AND FOR A FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48, as if fully set forth herein.

54. On February 22, 2018, Defendant offered to borrow 20 BTC from Plaintiff and repay the amount on the terms provided in the Draft Note.

55. On the same date, Plaintiff accepted the offer and paid the 20 BTC to Defendant.

56. There was consideration for the bargain in the form of the benefit of the loan made to Defendant and the benefit of the interest to be paid to Plaintiff.

57. Defendant ratified the validity of the loan agreement by making payments to Plaintiff.

58. Defendant also confirmed the outstanding balance of 18 BTC in his text message on April 30, 2020.

59. The parties intended to be bound to the contract by virtue of their written and oral statements.

60. Plaintiff performed the contract by loaning the 20 BTC to Defendant on February 22, 2018.

61. Defendant breached the contract by failing to repay Plaintiff as agreed, specifically, by failing to make the agreed monthly repayments from March 22, 2018 to February 22, 2019 as provided in the Draft Note.

62. Defendant further repudiated the contract when Defendant told Plaintiff that he would need to seek repayment from Beckford.

63. Plaintiff suffered damages by not receiving the promised payments from Defendant.

64. By reason of the foregoing, Defendant is liable to Plaintiff in an amount equivalent to the outstanding principal of the loan, or 18 BTC, plus statutory interest, reasonable attorney fees, and costs.

**AS AND FOR A SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**

65. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 60, as if fully set forth herein.

66. Defendant gained an advantage by obtaining a loan of bitcoin from Plaintiff on February 22, 2018.

67. The advantage was at the expense of Plaintiff, in the amount of the outstanding unpaid loan principal of 18 BTC.

68. Restitution is required by equity, good conscience, and morality based upon the close relationship between Plaintiff and Defendant, the loan by Plaintiff

being induced in reliance on that relationship, and the benefits received by Defendant.

69. By reason of the foregoing, Defendant is liable to Plaintiff in an amount equivalent to 18 BTC, plus statutory interest and costs.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. On the First Cause of Action, awarding damages in favor of Plaintiff in an amount to be determined at trial, but in no event less than the equivalent of 18 BTC (approx. $1,890,000) plus statutory interest, costs, and reasonable attorney fees.

B. In the alternative to A, on the Second Cause of Action, awarding damages in favor of Plaintiff in an amount to be determined at trial, but in no event less than the equivalent of 18 BTC (approx. $1,890,000) plus statutory interest and costs.

C. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: January 24, 2024

Respectfully submitted,

*/s/ Daniel Joseph Jones*

DANIEL JOSEPH JONES
LAW OFFICE OF D. J. JONES PLLC
99 Wall Street, Suite 1296
New York, NY 10005
(917) 733-1596
joe@djjon.es

*Attorneys for Plaintiff Julian Mear*